ELISHA C. FARREN

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Washington.    Opinion June 8, 1914.

*Assignment.   Demurrer.   Exceptions.   Fire Loss.   Insurance.   Locomotive Engine.   Negligence.   R. S., Chap. 52, Sec. 73.   Subrogation.*

Under Revised Statutes, Chap. 52, Sec. 73, which provides that where property is injured by fire from a locomotive engine, the railroad company is responsible and has an insurable interest in the property and is entitled to the benefit of any insurance effected by the owner, less the premium and expense of recovery. The railroad company is absolutely responsible, and is entitled to the benefit of the insurance, whether the fire was caused by its negligence or not.   Hence it is held that an insurer which has paid a loss occasioned by fire from a locomotive engine is not subrogated to the owner's rights against the railroad company, and cannot maintain an action against it to recover the amount paid.

*Dyer* v. *Maine Central R. R. Co.*, 99 Maine, 195, is overruled upon the point of subrogation.

On exceptions by defendant. Exceptions sustained. Demurrer sustained.

This is an action on the case to recover damages to plaintiff's buildings and personal property contained therein, alleged to have been caused by fire communicated to said buildings by sparks from the locomotive engine belonging to and being operated by the defendants, at Cherryfield in the County of Washington, on the 24th day of December, 1909. The case was entered in the Supreme Judicial Court for said County on the second Tuesday of October, 1911. At the October Term of said court, 1913, the defendant demurred to the plaintiff's declaration, with leave to plead over by agreement. The demurrer was overruled by the Justice presiding and the defendant excepted to the overruling of the same.

The case is stated in the opinion.

*Robert E. Hall,* for plaintiff.

*White & Carter,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, KING, HANSON, PHILBROOK, JJ.

SAVAGE, C. J. But a single question is presented by this record. It is, whether an insurance company, having paid a loss occasioned by fire communicated by a locomotive engine, by reason of the negligence of the railroad company using it, is subrogated to the rights of the owner, and can maintain an action in his name to recover the amount of the loss so paid? This question was answered in the affirmative in *Dyer* v. *Maine Central R. R. Co.*, 99 Maine, 195. If the decision was well founded, this action is maintainable; otherwise, not. The defendant contends that the construction given to the statute, R. S., Chap. 52, Sec. 73, relating to the subject matter, was unsound, and earnestly asks us to re-examine and reconsider the question.

The statute in question reads as follows: "Where a building or other property is injured by fire communicated by a locomotive engine the corporation using it is responsible for such injury, and it has an insurable interest in the property along the route for which it is responsible, and may procure insurance thereon. But such corporation shall be entitled to the benefit of any insurance upon such property effected by the owner thereof less the premium and expense of recovery. The insurance shall be deducted from the damages,

if recovered before the damages are assessed, or, if not, the policy shall be assigned to such corporation, which may maintain an action thereon, or prosecute, at its own expense, any action already commenced by the insured, in either case with all the rights which the insured originally had." This language is general and comprehensive, and, if read literally, it includes all cases of fire communicated by locomotive engines, whether by reason of negligence or not. And if the statute be construed as it reads, it is clear that, since the railroad company is, in all cases, "entitled to the benefit of any insurance upon such property effected by the owner," the insurance company is not entitled to subrogation, and cannot maintain an action to recover the amount paid from the railroad company. For, were it otherwise, when the railroad company has received the insurance, or has had the benefit of it, the insurance company can then recover it back and thus deprive the railroad company of the benefit of the insurance. So that, if the statute was intended to include all cases, such a construction would plainly defeat the intention of the legislature.

It is not doubted that prior to the enactment of any statute upon the subject, a railroad company was responsible for fires communicated by its locomotive engines, through its negligence, but not otherwise. By the ancient common law or custom of the realm, if a house took fire the owner was held answerable for any injury thereby occasioned to others. Every house owner was thereby an insurer. But the rigor of this rule was modified by the statute of 6 Ann., Chap. 31, so that the owner was exempted from liability when the fire was occasioned by accident. It is said that the rule does not appear to have been applied to the owner of a field, where a fire may have been kindled. For Baron Comyns states that an action lies, at common law, against the owner "if a fire be kindled in a yard or close, to burn stubble, and by negligence it burns corn in an adjoining close." Com. Dig. A. 6; *Bachelder* v. *Heagan*, 18 Maine, 32. And these principles were in force when railroads were first constructed in this State. A person whose property was injured by fire had a remedy at common law against the one by whose negligence it was occasioned. And the same rule applied when a fire was communicated through negligence by a locomotive engine. The railroad company was in the lawful operation of its engines, so that, unless negligent, it committed no wrongful act, and was not liable. Without negligence, no liability.

But this negligence rule placed upon owners of lands adjacent to railroads an unusual and unjust burden. The chances of fire by locomotives were great. And the proof of negligence as to a particular locomotive, at a particular time, was from the nature of things difficult, and sometimes impossible. Besides, property exposed by fire to locomotives was in danger, even when the operation was reasonably careful. They were such considerations as these, no doubt, which led the legislature in 1842 to enact special provisions for liability in case of injury caused by fires communicated by locomotives. Sec. 5 of Chap. 9 of the Public Laws of that year read as follows:—''Whenever any injury is done to any building or other property of any person, or corporation, by fire communicated by a locomotive engine of any railroad corporation, the said corporation shall be held responsible in damages to the person or corporation so injured; and any railroad shall have an insurable interest in the property for which it may be so held responsible in damages along its route, and may procure insurance thereon in its own behalf.'' This act extended the liability of railroad companies to cases of fires communicated by locomotive engines, without negligence. As was said in the Dyer case,—''It was no longer necessary to allege and prove negligence in the use of the engine, and the statute in effect made the railroad company an insurer. If the property was damaged, the insurance company was entitled to subrogation. In such case, the owner might collect of either party he saw fit.'' Under the Act of 1842, the plaintiff could maintain this action.

The Act of 1842, though condensed, in the several revisions, remained unchanged in substance, until the enactment of Chap. 79 of the Public Laws of 1895. The 1895 statute amended R. S., (1883) Chap. 51, Sec. 64, which was the original 1842 statute, by adding the provision that the railroad ''corporation shall be entitled to the benefit of any insurance upon such property, effected by the owner thereof,'' which is to be deducted from the damages, if recovered before the damages are assessed, or if not, to be assured to the railroad company by assignment of the policy.

The opinion in the Dyer case proceeded upon the theory that the Act of 1842, while it created a new liability in the railroad company and a new right of action in the injured owner, in cases where the fire was communicated without negligence, yet left unchanged the old common law liability and right of action, based upon negligence.

The expression in the opinion was, "The Act of 1842 broadened the liability of a railroad company so that it was made to embrace all cases of fire communicated from its locomotive engines." But after stating that both the railroad company and the insurance company are insurers, the former by force of the statute and the latter by contract, the opinion goes on to say that the amendment of 1895 had "special and particular reference to the adjustment of the liability of the two insurers, in the cases falling under the section which was amended, and in which it was necessary for the owner to invoke the statutory liability of the defendant in order to recover against it," and that "the act is limited in its application to those cases in which the section amended makes the railroad company an insurer, in other words, to those cases in which the liability of the defendant is created by that section, and not by its own negligent act."

The plain import of the language of the opinion is, that there are still two classes of cases, two distinct kinds of liability, in railroad locomotive fire cases, one at common law, for negligence, the other, under the statute, without negligence. With the first there is the right of subrogation, with the latter, not.

The construction to be given to the amendment of 1895 we think necessarily depends upon the proper construction of the Act of 1842. It is an amendment to that Act. It is as broad and comprehensive as that Act, no more, no less. It embraces all the cases which the Act of 1842 embraced. We must recur then to a construction of the Act of 1842. If that Act, properly interpreted, that is, interpreted to give expression to the legislative intent, is limited to cases of non-negligence, then the amendment of 1895 should be so limited, as it was, in effect, in the Dyer case.

The Act of 1842 made the railroad company an insurer. Was it an insurer only in cases of non-negligence? Or was it an insurer in all cases? The Act makes no distinction. If the Act merely "broadened the liability of a railroad company," it is difficult to see that any distinction remained. If its effect was that "it was no longer necessary to allege and prove negligence," it would seem that no distinction was left. Now if the owner has one right of action when there is negligence, and another where there is none, some practical questions arise. Is he bound to elect, at his peril? If he elects to sue for negligence, can he prevail if he proves a case, without negligence? If he sues the railroad company as an insurer, and recovers judgment

for the excess of his damage over insurance, can the insurance company then proceed in his name against the railroad company, on the ground of negligence? If he sues at common law and fails to prove negligence, and for that reason his suit fails, may he then successfully sue under the statute? Was it the legislative intent that the Act of 1842 should expose the owner to the hazards of these various contingencies?

The ground of the decision in the Dyer case was forcibly expressed by the learned Justice who wrote the opinion, in these words:—"This amendment (that of 1895) had special and particular reference to the adjustment of the liability of two insurers, the insurance company and the railroad company, in those cases falling under the section which was amended, and in which it was necessary for the owner to invoke the statutory liability of the defendant corporation in order to recover against it. The legislature might well deem it just that, as between the voluntary insurer by contract and the one which without fault on its part is made such by law, the latter should have the preference. To go further and say that in a case where the railroad company is liable because of its own fault and negligence, and not as an insurer, it should have the benefit of any insurance effected by the owner upon such property, would be a manifest injustice. The consequences of the defendant's negligence would then fall not upon itself but upon the insurance company, not upon the guilty, but upon the innocent. We cannot believe that a result so repugnant to justice could have been within the legislative intention." The effect of the decision in the Dyer case was to interpret the 1895 amendment as if it contained an exception in these words:—"except in cases where the fire was communicated through the negligence of the railroad company." But no such exception was expressed in the statute.

It must be remembered that the relation, as to liability, between the railroad company and the property owner, and the relation, as to who shall bear the burden ultimately, between the railroad company and the insurance company, are regulated by the legislature in accordance with its conception of sound public policy. In one aspect of the case, it might seem a manifest injustice that a railroad company should be compelled to pay for a fire loss, occasioned while in the exercise of an undoubted legal right, and without any fault on its part. Nevertheless it cannot now be doubted that it was a wise public policy to subject the railroad company to that liability.

It is not for the court to question the soundness of the legislative view of public policy. It becomes a matter of argument only when it is sought to establish what the legislature could, or could not, have intended to enact as a matter of public policy. And we are now led to say that the legislature may have considered it as not repugnant to justice to place the ultimate burden upon the voluntary insurer, which receives, as compensation for its undertaking, a premium supposedly adequate for the risk insured against, rather than upon the railroad company which is made liable to the owner at all hazards, whether in fault or not. It is not repugnant to justice to hold the insurer liable for losses by fire occasioned by the negligence of the insured, for it seems to be universally settled that the carelessness of the insured, not amounting to intentional wrong doing, is not a defense in an action upon a policy. One who procures insurance seeks protection against his own negligence as well as that of others. So that the mere fact that the fire is occasioned by negligence presents no phase of injustice to the insurance company which is compelled to pay the loss.

And if it is not unjust to hold the insurance company to its contract, where the loss is occasioned by the owner's negligence, it does not seem to be necessarily unjust to hold it to a liability for which it cannot have subrogation, when the loss is occasioned by the negligence of the railroad company. It was the precise risk which it assumed, and for which it was paid. In case of loss, it loses no more than it contracted to pay. It is not compellable to insure at all, property exposed to locomotive fires. If it does, it is supposed to exact an adequate and satisfactory premium. If it can recover the loss of the railroad company, it virtually assumed no risk at all. These suggestions are not made as reasons why the legislature should or should not, deem it proper to require the insurance company to bear the full pecuniary burden of its contract, but rather to show that if the legislature should so require, by giving the benefit of the insurance to the railroad company, it would not be wholly unjust to the insurance company.

We feel constrained to declare that the decision in the Dyer case is not founded upon the better reason. We hold now that the Act of 1842 enlarged the common law liability for negligence into an absolute responsibility; that the presence or absence of negligence is entirely immaterial, and therefore that negligence need not be

alleged nor proved in any case; that there is only one kind of liability, that declared by statute, and that that is applicable in all cases without distinction; and that the amendment of 1895, giving the railroad company the benefit of the insurance, is as broad as the original statute, and applies like it to all cases without distinction. This conclusion accords precisely with the language of the statute.

It is interesting to note that since the Dyer case was decided, the question which we have discussed has arisen both in Massachusetts and New Hampshire under statutes substantially like our own, and in each State, the highest court has reached the same conclusion as that which we now express. *New England Box Co.* v. *N. Y. C. & H. R. R.*, 210 Mass., 465; *Boston Ice Co.* v. *B. & M. R. R.*, (N. H.), 86 Atlantic Rep., 356.

The demurrer to the plaintiff's declaration was overruled below, in accordance with the Dyer case. We think it should have been sustained.

*Exceptions sustained.*
*Demurrer sustained.*